IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

National Union Fire Insurance :
Company of Pittsburgh, PA,
:
    Plaintiff,
:
  v.                        Case No. 2:03-cv-0160
:
Richard O. Wuerth, et al.,     JUDGE SMITH
: MAGISTRATE JUDGE KEMP
    Defendants.

OPINION AND ORDER

    This case, a legal malpractice action in which the Court has written several prior opinions relating to discovery matters, is currently before the Court to consider a motion to compel discovery filed by the defendants. In addition to responsive and reply memoranda, both a surreply memorandum and a supplemental memorandum have been filed, so that defendants have had three opportunities to address the issues raised in their motion and National Union has had two. For the following reasons, the motion to compel will be granted.

I.

    The motion to compel relates to three interrogatories and a set of document requests which were served on National Union on March 1, 2005. National Union declined to answer the interrogatories and also refused to produce the requested documents. After counsel exhausted extrajudicial efforts to resolve this impasse, the motion to compel was filed.

    The discovery requests relate to two separate subjects: identifying information concerning Robert J. DeMaria, the individual who retained defendants to represent the insureds in the prior litigation and to whom defendant Wuerth reported, and information concerning any reinsurance agreements which National

Union had concerning the sums it was ultimately obligated to pay to resolve the prior litigation. The Court turns first to the request for information concerning Mr. DeMaria.

## II.

The interrogatory relating to Mr. DeMaria simply asked for contact information since Mr. DeMaria no longer has the job which he held at the time he retained the defendants. The document request which relates to him asked for the production of his personnel file. In its first memorandum, National Union disputes that it refused to provide any information in response to these requests. Rather, it asserted that it had offered to provide the defendants with any information from Mr. DeMaria's personnel file that related to the prior litigation, but it declined to produce the entire file because most of it contained both irrelevant and personally sensitive information. National Union did not explain, either in its first memorandum or its surreply memorandum, why it refused to answer the interrogatory concerning contact information for Mr. DeMaria.

In response, defendants asserted that the only purpose of asking for the personnel file was to obtain the same contact information requested in the interrogatory. Defendants disclaim any interest in the various personal matters contained in Mr. DeMaria's file.

It does not appear that the parties disagree that Mr. DeMaria is a potential witness in this case. National Union has advanced no reason why the defendants are not entitled to contact information for Mr. DeMaria so, at a minimum, they might notice him for a deposition. National Union has also offered to provide additional information from his personnel file that relates to Mr. DeMaria's work on the prior litigation. Because defendants do not ask for any more information than National Union has agreed to provide, there is not really a dispute concerning this

matter.  However, since defendants have filed a motion to compel, National Union will be ordered to provide the information within 15 days.

### III.

The more significant dispute between the parties relates to the issue of reinsurance.  Although National Union has resisted producing any specific details about reinsurance agreements which it may have entered into and from which it may have received reimbursement concerning the prior litigation, National Union asserts in its memoranda that reinsurance arrangements existed and that it received less then 50 percent of its claimed damages from one or more reinsurers.  Nevertheless, it argues, relying primarily upon the collateral source rule, that neither the reinsurance agreements nor information concerning the amount which it received from reinsurers is discoverable in this case.

Although the parties' briefing, especially beginning with the reply memorandum, focuses on whether the collateral source rule would permit defendants to claim an offset in this case for any amounts received by National Union from reinsurers, that is an issue of substantive law which relates tangentially, if at all, to the question of whether the defendants are entitled to discover the existence and terms of any reinsurance agreements. The scope of discovery is quite broad.  Discovery is appropriate with respect to information which relates to any claim or defense in the action and which is reasonably calculated to lead to the discovery of admissible evidence.  Under that standard, the Court concludes that the reinsurance information requested by defendants is clearly discoverable.

Apart from the collateral source issue, which the Court need not resolve at this time, there may be a significant issue here concerning whether National Union is the real party in interest with respect to the entire claim being asserted in this case and

whether any reinsurer might be compelled to be joined as a party pursuant to Fed. R. Civ. P. 17(a) and 19.  At a minimum, the defendants are entitled to discover whether circumstances exist which would permit them to argue that any reinsurer is a real party in interest or a party which ought to be joined to this litigation or, alternatively, to determine whether the current posture of the litigation adequately protects the defendants against multiple or inconsistent obligations.

Numerous cases have recognized that a reinsurer may, either as a matter of state common law or through provisions in the reinsurance contract, be subrogated to the rights of the insured up to the amount of the payments which the reinsurer has made.  See, e.g., State Security Ins. Co. v. Frank B. Hall & Co., 109 F.R.D. 99 (N.D. Ill. 1986); State Security Ins. Co. v. Frank B. Hall & Co., 109 F.R.D. 95 (N.D. Ill. 1986); see also Gannett v. Pettegrow, 224 F.R.D. 293 (D. Me. 2004); Agri-Mark, Inc. v. Niro, Inc., 190 F.R.D. 293 (D. Mass. 2000).  Although the question of whether an insurer is subrogated to the extent of its payments, and therefore either entitled to participate in an action to recover those payments or required to be joined in such an action, is an issue of state law, see Glacier General Assurance Co. v. G. Gordon Symons Co., 631 F.2d 131 (9th Cir. 1980), Ohio has long recognized a common law right of subrogation on behalf of an insurer who has made such payments.  See McDonald v. Republic-Franklin Ins. Co., 45 Ohio St. 3d 27, 29 (1989) (disapproved on other grounds, Ferrando v. Auto-Owners Mutual Ins. Co., 98 Ohio St. 3d 186 (2002)), citing Newcomb v. Cincinnati Ins. Co., 22 Ohio St. 382 (1872).  Thus, it is entirely possible that under Ohio law, any reinsurer which paid money to National Union has become subrogated to National Union's rights to that portion of any recovery from the defendants and either ought to be joined as a necessary party or ought to join

as a real party in interest.  Rule 17(a) does, of course, provide for alternative means for absent real parties in interest to have their rights asserted in such a way that the defendants do not run the risk of multiple or inconsistent liability.  In this case, however, without any information concerning the content of the reinsurance policies, whether they contain subrogation language, or whether those contracts, construed under Ohio law, would give rise to a common law right of subrogation, it is impossible for the defendants to determine whether procedural motions under Rule 17 and 19 ought to be filed.  Because that information relates to a claim or defense in this case (the affirmative claim of National Union for full recovery, and potential defenses based on Rules 17 and 19), it is discoverable.  Consequently, National Union will be compelled to produce the reinsurance agreements and any evidence of payments made under those agreements.

Defendants have also requested documents reflecting communication between National Union and any reinsurers concerning the progress of the underlying litigation.  They assert that such files could refute one of the malpractice theories being advanced in this case, namely that Mr. Wuerth did not adequately keep National Union advised concerning the issues raised in, and the progress of, the prior litigation.  National Union has not responded to this argument.  Consequently, any documents reflecting communications with reinsurers about the prior litigation must also be produced.

IV.

Based upon the foregoing, defendants' motion to compel (doc. #56) is granted.  National Union shall produce the information requested by the underlying discovery requests, subject to the limitations relating to Mr. DeMaria's personnel file set forth in this order, within 15 days of the date of his order.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.


/s/ Terence P. Kemp
United States Magistrate Judge

6